UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

CECIL ELMORE,

                    Plaintiff,

          v.

RUBEN ISLAS, JR., et al.,

                    Defendants.

Case No. 2:24-cv-01719-JLS-JDE

ORDER REGARDING FIRST AMENDED COMPLAINT

## I.

## INTRODUCTION

On March 1, 2024, Plaintiff Cecil Elmore ("Plaintiff"), proceeding pro se and in forma pauperis, filed a 531-page Complaint against 146 defendants, including Starbucks, Walmart, the Coco-Cola Company, Bank of America, Burger King, the Los Angeles Police Department, the City of Los Angeles, several security companies, several dentists and dental professional corporations, and 25 Doe defendants, listing 540 causes of action. Dkt. 1 ("Complaint"). While the specific allegations and details of the Complaint were confusing and difficult to follow, Plaintiff's primary contention appeared to be that the defendants are engaged in a racially-motivated conspiracy to subject

1

him to unlawful housing conditions, evict him from his apartment, and retaliate against him for reporting the uninhabitable housing conditions and initiating civil actions against them.

On March 26, 2024, after screening the Complaint in accordance with 28 U.S.C. § 1915(e)(2), the Court issued an order identifying apparent defects in the Complaint, including the failure to comply with Rule 8 of the Federal Rules of Civil Procedure ("Rule 8"), and providing Plaintiff with options as to how to proceed, including the option to file an amended complaint. Dkt. 5.

On April 16, 2024, Plaintiff filed a 106-page First Amended Complaint, including attachments. Dkt. 6 ("FAC"). The FAC names the following 27 defendants: Ruben Islas Jr. ("Islas Jr."); Ruben Islas ("Islas"); Martha Islas-Enriquez ("Islas-Enriquez"); Jules Lucius Arthur ("Arthur"); Paul Runkle ("Runkle"); Bethany Spooner ("Spooner"); Michael Vasquez ("Vasquez"); Mark Wiese ("Wiese"); Aracelli Castillo ("Castillo"); Wendy Contreras ("Contreras"); Luther Gadson ("Gadson"); Gonzalo Rivera ("Rivera"); Logan Capital Advisors, LLC ("Logan Capital"); the Rosslyn Lofts Housing Partners, LP ("Rosslyn Lofts"); Logan Property Management, Inc. ("Logan Property"); the Amerland Group, LLC ("Amerland"); Islas Development, LLC ("Islas Development"); Suffolk Development, LLC ("Suffolk Development"); Pacific Housing, Inc. ("Pacific Housing"); Rosslyn Partners, LLC ("Rosslyn Partners"); Chase Protective Services, Inc. ("Chase"); Thomas Paul White ("White"); Jose Ramirez ("Ramirez"); Dewey Services, Inc. ("Dewey"); Theodore Victorio ("Victorio"); Gladys Boateng ("Boateng"); and Edgar Antonyan ("Antonyan") (collectively, "Defendants").[1] The focus of the FAC continues to be Plaintiff's allegedly unlawful housing conditions and efforts to

---

[1] Plaintiff also names 20 Doe Defendants. Under C.D. Local Civil Rule 19-1, Plaintiff may no name more than 10 doe defendants. In any event, as Plaintiff has not stated a claim against these defendants, dismissal is warranted as to all 20 Does.

evict him. Plaintiff asserts violations of 42 U.S.C. § 1981 ("Section 1981" or "§ 1981") and Title VI of the Civil Rights Act of 1964 ("Title VI"), as well as state law claims for breach of contract and fraud. Plaintiff seeks an order "enjoining Defendants from violating Federal and State Laws"; a declaration that Defendants "have violated Federal and State Laws"; statutory and compensatory damages; and reasonable attorneys' fees and costs. FAC at 58.

Under 28 U.S.C. § 1915(e)(2), the Court must review the operative complaint "at any time" to determine if the action is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief from an immune defendant. For the reasons explained below, the FAC appears to be subject to dismissal.

## II.

### SUMMARY OF PLAINTIFF'S FACTUAL ALLEGATIONS

While Plaintiff has narrowed his allegations and claims, as in the original Complaint, the FAC is replete with legal conclusions and argumentative assertions, lacking factual support. Plaintiff alleges a "racketeering enterprise" and a vast conspiracy involving private and public individuals and entities, including state and local government officials, to defraud local, state, and federal agencies of funding. See, e.g., FAC ¶¶ 35, 59. Plaintiff claims that Defendants have discriminated against, retaliated against, and defrauded African American and disabled residents since 2006, and contends that Defendants have discriminated against him based on his race. See id. ¶¶ 35, 66. While some of the specific allegations and details of the FAC are confusing and difficult to follow, or rely exclusively on conjecture and speculation, the Court attempts to summarize the FAC's factual allegations.

Plaintiff is an African American suffering from a mental and physical disability. FAC ¶ 6. He resides at the Rosslyn Lofts apartments, apparently owned by Islas Jr., Islas, and Islas-Enriquez. Id. ¶¶ 35, 37. The building is

3

comprised mostly of low income and disabled residents. Id. ¶ 59. Plaintiff avers that he has a "Tax Credit Lease" ("Lease"), which he claims is a "contract in a Federally assisted program." Id. ¶¶ 6, 61. Plaintiff's Lease includes a "Fair Housing Policy," which he claims Defendants have violated. Id. ¶ 82.

Plaintiff complains of uninhabitable living conditions at his apartment building dating back to 2006, including cockroach infestations, pest infestations, trash in the hallways, overflowing trash bins, feces and urination in the hallways, a lack of running water, and inoperable trash chutes. FAC ¶¶ 37-38, 45, 47, 49. He also alleges violence on the premises and illegal narcotics being sold. Id. ¶¶ 42, 59. Plaintiff and other residents have made numerous complaints to local government agencies. Id. ¶¶ 37-38, 47, 49. Numerous fraudulent health inspections have been conducted, failing to document these conditions. Id. ¶ 37. Plaintiff asserts that Los Angeles County inspectors have notified defendants prior to the inspections to give them an opportunity to clean the apartment building. Id.

Several defendants retaliated against Plaintiff for reporting the fraudulent inspections by issuing more fraudulent inspection reports and denying him access to the inspections. FAC ¶ 37. In April 2021, Russ, an employee of Dewey, filed a false inspection report with Los Angeles County Public Health in retaliation for Plaintiff filing complaints with local government agencies. Id. ¶ 123. Two additional fraudulent inspection reports were filed in May and December 2021 by inspectors of the Los Angeles Public Health Department. Despite witnessing active infestations, these inspectors reported that there were no active pest infestations. Id. ¶¶ 129, 132, 134, 136-37.

Plaintiff further alleges that property manager Contreras call Plaintiff a "n*****" on several occasions when Plaintiff filed complaints of uninhabitable housing conditions, cockroach infestations, dirty apartment hallways, lack of running water, and inoperable elevators. FAC ¶ 99. Plaintiff claims he has

4

been called this on "numerous occasions" by Contreras, Vasquez, Castillo, Ramirez, and Rivera, all employees at the apartment building. See id. ¶¶ 36, 62, 66, 77, 88, 99, 112. Plaintiff reported Contreras to the Department of Fair Employment and Housing and on February 16, 2021, Contreras, Rosslyn Lofts, and Logan Property were served with Plaintiff's complaint. Id. ¶ 87.

Plaintiff also filed several complaints with the California Department of Consumer Affairs and their subdivisions about unlicensed security companies and employees working at his apartment building that have not been properly investigated. FAC ¶ 40. He also filed civil lawsuits against Islas Jr., Islas, Islas-Enriquez, Vasquez, Contreras, Castillo, Gadson, Logan Capital, Rosslyn Lofts, Logan Property, Amerland, Spooner, Chase, White, Ramirez, and Dewey, among others, which has resulted in physical violence and threats of violence. Id. ¶ 51. Plaintiff claims Islas Jr., Islas, Islas-Enriquez, Rosslyn Lofts, Logan Property, and Amerland hired Harold Samuel Beard to severely injury Plaintiff's right hand and had another resident, Melinda Johnson ("Johnson"), spray mace into the faces of Plaintiff and Gurkirn Hundal ("Hundal"). Id. ¶ 52. He contends he was forced to dismiss his lawsuits. Id. ¶ 53.

Plaintiff also references incidents in which he was allegedly falsely accused of harassing others. On December 2, 2020, Islas Jr. and Islas issued a 10 Day Notice to Quit to Plaintiff, which contained false facts accusing Plaintiff of threatening and verbally assaulting another tenant. FAC ¶¶ 75-76. This is apparently based on an incident that occurred on November 20, 2020. On that date, Plaintiff and Hundal were on the elevator with a Caucasian resident and two other African American individuals. The Caucasian resident was wearing a face mask, stated that there were too many people on the elevator, and called Plaintiff a "dirty black boy." This resident, who lives on an upper floor of the apartment building with no low income residents, did not report this incident and Plaintiff was never questioned about it; instead, he was

provided with the Notice to Quit, ordering him to surrender and quit his tenancy, which was allegedly done because he is African American. Id. ¶ 76.

Plaintiff also alleges two false temporary workplace restraining orders were issued against him and two unlawful detainer actions were initiated for allegedly harassing and threatening employees of the apartment building, including Contreras. FAC ¶¶ 59, 63. It appears at least one of the restraining orders and detainer actions were ultimately denied, and Contreras was terminated. Id. ¶¶ 48, 59, 63, 88. Based on the allegations of harassment, Plaintiff also apparently received a Notice to Perform Covenant or Quit on October 28, 2020 (id. ¶ 63); a false incident report on February 17, 2021 (id. ¶ 88); and a false lease violation on February 19, 2021 (id. ¶ 100). Although confusing, it appears Plaintiff is claiming these actions were being taken because (1) he is African American; (2) he filed numerous complaints with local government agencies; and (3) he was "a victim/witness" in a criminal case against Domonick Lawrence Guy, who had threatened Plaintiff at the apartment building. Id. ¶¶ 59, 63, 88. Defendants also retaliated against Plaintiff by moving forward with an unlawful eviction that had no merit, motivated by racial discrimination and the intent to have him evicted to prevent his complaints from being investigated. Id. ¶ 102.

In April 2008, the Los Angeles City Attorney filed criminal counts "against the companies" based on fire code violations at Plaintiff's apartment building and another property. FAC ¶ 56. Plaintiff describes a fire that occurred at his apartment building years later, on April 4, 2021. He claims that on March 15, 2021, an employee at the apartment building, Rivera, entered the apartment of another resident, Robert Kemp ("Kemp"), and "disconnected" the only "smoke detector" inside his apartment. After this incident, Plaintiff told Vasquez that Rivera had disconnected the "carbon monoxide detector" in that apartment as it was inoperable, but he was ignored. Id. ¶ 112. On April 4,

6

2021, Kemp intentionally started a fire in his apartment, located about 15 feet from Plaintiff's apartment. Plaintiff had previously emailed Islas Jr., Islas, Islas-Enriquez, Arthur, Runkle, Vasquez, Spooner, Castillo, Rosslyn Lofts, Logan Property, Logan Capital, Suffolk Development, Islas Development, Amerland, Pacific Housing, Wiese, Rosslyn Partners, and Contreras about Kemp intentionally setting fires. During the fire, Plaintiff suffered from emotional distress and smoke inhalation. The smoke filled the air in Kemp's apartment, the hallway, and subsequently Plaintiff's apartment. The "carbon monoxide detector" did not sound an alarm. The Los Angeles Fire Department and Captain Abraham Tapia "confirmed" that the "smoke detector" was "inoperable." After the incident, Rivera stated that the "owner Defendant Ruben Islas Jr, told him to turn off the carbon monoxide detector, to get 'the black guy Cecil' out of his apartment unit." Id. ¶ 113. Plaintiff claims there are provisions in his Lease regarding tampering with and testing the carbon monoxide detectors, which were violated. Id. ¶ 114. Plaintiff is not aware of Defendants having disarmed the carbon monoxide detectors of Caucasian residents who have Tax Credit Lease contracts. Id. Plaintiff alleges the Caucasian residents are treated differently, including receiving full privileges in the services of the building, such as management and security guards. Id. ¶¶ 76, 82. Plaintiff has witnessed other African American residents being arrested, including on false allegations. See id. ¶¶ 63-65. Caucasian residents are not disrespected, their allegations are properly investigated, and they are not subjected to retaliation. Id. ¶ 101. For instance, Plaintiff notes that when Caucasian resident Johnson complained of "housing issues," she was not subjected to retaliation or given a lease violation. Id. ¶ 101.[2]

---

[2] The FAC refers to a production studio and other rental properties, some in other states, the purpose of which is unclear. See, e.g., FAC ¶¶ 41-43, 49-50, 54-55, 57, 59.

### III.

### STANDARD OF REVIEW

A complaint may be dismissed for failure to state a claim for two reasons: (1) lack of a cognizable legal theory; or (2) insufficient facts under a cognizable legal theory. Mendiondo v. Centinela Hosp. Med. Ctr., 521 F.3d 1097, 1104 (9th Cir. 2008). Pleadings by pro se plaintiffs are reviewed liberally and afforded the benefit of the doubt. Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam); see also Hebbe v. Pliler, 627 F.3d 338, 342 (9th Cir. 2010) (as amended). However, "a liberal interpretation of a civil rights complaint may not supply essential elements of the claim that were not initially pled." Bruns v. Nat'l Credit Union Admin., 122 F.3d 1251, 1257 (9th Cir. 1997) (citation omitted). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

In assessing whether a complaint states a viable claim, the Court applies the same standard as it would when evaluating a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)"). See Rosati v. Igbinoso, 791 F.3d 1037, 1039 (9th Cir. 2015) (per curiam). Rule 12(b)(6), in turn, is read in conjunction with Rule 8(a). Zixiang Li v. Kerry, 710 F.3d 995, 998-99 (9th Cir. 2013). Under Rule 8, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Rule 8(a)(2). Though Rule 8 does not require detailed factual allegations, at a minimum, a complaint must allege enough specific facts to provide both "fair notice" of the particular claim being asserted and "the grounds upon which [that claim] rests." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 & n.3 (2007) (citation omitted); see also Iqbal, 556 U.S. at 678 (observing that Rule 8 standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation"); Brazil v. U.S. Dep't of Navy, 66 F.3d 193, 199 (9th

Cir. 1995) (finding that even pro se pleadings "must meet some minimum threshold in providing a defendant with notice of what it is that it allegedly did wrong").

Thus, to survive screening, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 570). A claim is "plausible" when the facts alleged support a reasonable inference that the plaintiff is entitled to relief from a specific defendant for specific misconduct. Id. Allegations that are "merely consistent with" a defendant's liability, or reflect only "the mere possibility of misconduct" do not show "that the pleader is entitled to relief," and thus are insufficient to state a claim that is "plausible on its face." Id. at 678-79 (citations omitted). "Taken together, Iqbal and Twombly require well-pleaded facts, not legal conclusions that 'plausibly give rise to an entitlement to relief.' The plausibility of a pleading thus derives from its well-pleaded factual allegations." Whitaker v. Tesla Motors, Inc., 985 F.3d 1173, 1176 (9th Cir. 2021) (citations omitted).

If the Court finds that a complaint should be dismissed for failure to state a claim, the Court has discretion to dismiss with or without leave to amend. See Lopez v. Smith, 203 F.3d 1122, 1126-30 (9th Cir. 2000) (en banc). Leave to amend should be granted if it appears possible that the defects in the complaint could be corrected, especially if a plaintiff is pro se. Id. at 1130-31; see also Cato v. United States, 70 F.3d 1103, 1106 (9th Cir. 1995) (noting that "[a] pro se litigant must be given leave to amend his or her complaint, and some notice of its deficiencies, unless it is absolutely clear that the deficiencies of the complaint could not be cured by amendment"). However, if, after careful consideration, it is clear that a complaint cannot be cured by amendment, the Court may dismiss without leave to amend. See, e.g., Chaset v. Fleer/Skybox Int'l, 300 F.3d 1083, 1088 (9th Cir. 2002) (holding that "there

9

is no need to prolong the litigation by permitting further amendment" where the "basic flaw" in the pleading cannot be cured by amendment).

## IV.

## DISCUSSION

### A.    The FAC Fails to Comply with Rule 8

As previously advised, complaints must contain a "short and plain statement of the claim showing that the pleader is entitled to relief" and "[e]ach allegation must be simple, concise, and direct." Rule 8(a), (d). "[T]he 'short and plain statement' must provide the defendant with 'fair notice of what the plaintiff's claim is and the grounds upon which it rests.'" Dura Pharms., Inc. v. Broudo, 544 U.S. 336, 346 (2005) (citation omitted). "While 'the proper length and level of clarity for a pleading cannot be defined with any great precision,' Rule 8(a) has 'been held to be violated by a pleading that was needlessly long, or a complaint that was highly repetitious, or confused, or consisted of incomprehensible rambling." Cafasso, U.S. ex. rel. v. Gen. Dynamics C4 Sys., 637 F.3d 1047, 1059 (9th Cir. 2011) (citation omitted); Schmidt v. Herrmann, 614 F.2d 1221, 1224 (9th Cir. 1980) (affirming Rule 8 dismissal of "confusing, distracting, ambiguous, and unintelligible pleadings"). "Experience teaches that, unless cases are pled clearly and precisely, issues are not joined, discovery is not controlled, the trial court's docket becomes unmanageable, the litigants suffer, and society loses confidence in the court's ability to administer justice." Bautista v. Los Angeles County, 216 F.3d 837, 841 (9th Cir. 2000) (citation omitted).

The Ninth Circuit held that a dismissal for failure to comply with Rule 8 was proper where "the very prolixity of the complaint made it difficult to determine just what circumstances were supposed to have given rise to the various causes of action." McHenry v. Renne, 84 F.3d 1172, 1178 (9th Cir. 1996). Complaints that fail to comply with Rule 8 "impose unfair burdens on

litigants and judges" who "cannot use [such] complaint[s]" and "must prepare outlines to determine who is being sued for what." Id. at 1179. A complaint may be dismissed for violating Rule 8 even if "a few possible claims" can be identified and the complaint is not "wholly without merit." Id. (stating Rule 8's requirements apply "to good claims as well as bad").

Here, the FAC does not comply with Rule 8, as it does not set forth a short and plain statement of the purported grounds for relief against each defendant. Much of the FAC is incoherent, repetitive, and argumentative, and it is not always possible to determine what facts are alleged, or how those facts relate to Plaintiff's various claims. Factual allegations are scattered throughout the FAC, and not organized into a "short and plain statement" of the claim. As in the Complaint, Plaintiff makes broad, conclusory assertions, lacking a coherent explanation regarding the factual or legal basis for his purported claims. For instance, although it appears Plaintiff's primary grievance is that Defendants have discriminated against him based on his race, the SAC contains few facts supporting this speculative assertion. Other allegations, such as those regarding a production studio and other rental properties (see, e.g., FAC ¶¶ 41-43, 49-50, 54-55, 57, 59), appear to bear no discernable relationship to Plaintiff's underlying claims.

Further, although previously notified of this defect, the FAC continues to refer to Defendants collectively, without any explanation regarding how each defendant participated in the wrongful acts. For instance, he makes the blanket assertion that 18 of the 27 defendants are his landlords, but provides no plausible explanation for this contention. Id. ¶ 61. The FAC includes many defendants with unexplained, tenuous, or implausible connections to the alleged claims based solely on conclusory allegations of a conspiracy, collusion, aiding and abetting, "unity of ownership," or "alter ego" liability. Plaintiff names a number of entities solely on the basis that individual

11

defendants own these entities, regardless of whether the entity has any connection to the alleged wrongdoing. Plaintiff's sweeping conclusory allegations, naming Defendants collectively, without differentiation or explanation, does not suffice to state a claim for relief. Plaintiff's FAC makes it difficult, if not impossible, for Defendants to prepare meaningful responses to the claims brought against them.

Finally, it is unclear if Plaintiff seeks to name additional defendants in his FAC. Although Plaintiff names 27 defendants in the caption, he refers to several more defendants in the body of the FAC. To the extent Plaintiff seeks to name additional defendants, he has failed to comply with Fed. R. Civ. P. 10(a), requiring that the title of a complaint name all parties. Only Defendants named in the caption are considered defendants in this action.

## B.     The FAC Fails to State a Section 1981 Claim

In Claims One, Two, Three, Five, and Seven, Plaintiff asserts violations of Section 1981 against Islas Jr., Islas, Islas-Enriquez, Wiese, Arthur, Runkle, White, Vasquez, Spooner, Contreras, Castillo, Rivera, Ramirez, Logan Capital, Rosslyn Lofts, Logan Property, Amerland, Islas Development, Rosslyn Partners, Pacific Housing, Chase, and/or Suffolk Development. Liberally construed, Plaintiff appears to allege these defendants failed to enforce and/or comply with Plaintiff's Lease because he is African American.

Section 1981(a) provides:

All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

To state a Section 1981 claim, the plaintiff must allege: (1) he is a member of a racial minority; (2) the defendant had an intent to discriminate on the basis of race; and (3) the discrimination concerned one or more of the activities enumerated in the statute. Keum v. Virgin Am. Inc., 781 F. Supp. 2d 944, 954 (N.D. Cal. 2011). The plaintiff must prove purposeful discrimination. See Gen. Bldg. Contractors Ass'n v. Pennsylvania, 458 U.S. 375, 389-91 (1982); see also DeHorney v. Bank of Am. Nat'l Tr. & Sav. Ass'n, 879 F.2d 459, 467 (9th Cir. 1989) (per curiam) ("to establish a § 1981 claim, the plaintiff must prove intentional or purposeful discrimination"). "To prevail, a plaintiff must initially plead and ultimately prove that, but for race, [he] would not have suffered the loss of a legally protected right." Comcast Corp. v. Nat'l Ass'n of African-Am.-Owned Media, 589 U.S. 327, 341 (2020).

Section 1981(a)'s protection of the right "to make and enforce contracts" includes discrimination related to the leasing of rental property. See S. Cal. Hous. Rts. Ctr. v. Villa Caprice, L.P., 2018 WL 6016137, at *4 (C.D. Cal. Feb. 23, 2018) (citing Smith v. Heritage Ranch Owners Ass'n, 2010 WL 11459833, at *5 (C.D. Cal. Jan. 26, 2010)). Section 1981(b) defines "make and enforce contracts" to include "the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." The plaintiff must identify the impaired contractual relationship and "injuries flowing from a racially motivated breach of [his] own contractual relationship[.]" Domino's Pizza, Inc. v. McDonald, 546 U.S. 470, 476, 480 (2006).

The FAC's allegations do not state a Section 1981 claim. Plaintiff fails to link any particular defendants' actions to the making or enforcing of a contract. As noted, Plaintiff continues to refer to Defendants collectively, without any differentiation. As previously explained, Plaintiff must allege how each individual defendant violated Section 1981. He fails to meet that standard.

While Plaintiff appears to allege the defendants failed to enforce his Lease, he has not sufficiently described the terms of this Lease or defendants' specific roles and responsibilities in relationship to the Lease. For instance, he claims that 18 of the defendants are his "landlord" and seeks to hold them liable under Section 1981 because they "are responsible for having one of their employees intentionally place the document Notice to Perform Covenant or Quit" on Plaintiff's door. FAC ¶¶ 61, 63. However, Plaintiff provides no description of how each individual defendant is purportedly "responsible" or identify this employee's specific employer. Plaintiff cannot circumvent the requirement to allege individual causation by simply referring to defendants collectively, or relying on unsupported assertions that defendants are all responsible because they "collectively conspired, coerced, aided and abetted the unlawful acts" (see id. ¶ 63). Such conclusory allegations do not put Defendants on notice of their alleged individual conduct, rendering these claims subject to dismissal.

Similarly, Plaintiff largely relies on broad, conclusory assertions of racial discrimination without any factual support. Plaintiff's threadbare allegations and personal belief that defendants' actions were racially motivated are insufficient to state a plausible claim for relief. See Iqbal, 556 U.S. at 678-79; Joseph v. Boise State Univ., 667 F. App'x 241 (9th Cir. 2016). As to Vasquez, Contreras, Ramirez, Castillo, and Rivera,[3] identified as employees at the apartment building and/or a security company, Plaintiff alleges they called him a "n*****" on "numerous occasions." See, e.g., FAC ¶¶ 36, 66, 77, 88, 99, 112. As noted, to state a Section 1981 claim, Plaintiff must plead that, but for his race, he would not have suffered the loss of a legally protected right. See Comcast Corp., 589 U.S. at 341. Here, Plaintiff has alleged no facts to connect

---

[3] The FAC also refers to non-Defendants Ricardo Lopez and Johnson. See FAC ¶ 36.

14

these statements to alleged discriminatory conduct, let alone to the making or enforcing of his Lease. Indeed, the Court notes that, throughout the FAC, Plaintiff also contends the allegedly unlawful actions were done in retaliation for Plaintiff's complaints to local government agencies. The FAC's allegations do not establish a causal connection between the allegedly discriminatory statements and the loss of any legally protected right.

Finally, in Claim Seven, Plaintiff alleges discrimination arising out of a fire that occurred in April 2021. Plaintiff alleges that in March 2021, Rivera "disconnected and uninstalled" the only "smoke detector" in the apartment of Kemp, another resident. Plaintiff told Vasquez that Rivera "disconnected and uninstalled" Kemp's "carbon monoxide detector" "as it is inoperable," but he was ignored. FAC ¶ 112. On April 4, 2021, Kemp intentionally started a fire in his apartment unit, which is approximately 15 feet from Plaintiff's apartment. The "carbon monoxide detector" did not sound and the smoke filled the air in the hallway and Plaintiff's apartment. Plaintiff suffered emotional distress and smoke inhalation. The fire department captain confirmed that the "smoke detector" in Kemp's apartment was "inoperable." Plaintiff claims that after the incident, Rivera "stated that the owner Defendant Ruben Islas Jr., told him to turn off the carbon monoxide detector, to get 'the black guy Cecil' out of his apartment unit." Id. ¶ 113.

These allegations are insufficient to state a Section 1981 claim. First, Plaintiff refers to a smoke detector and carbon monoxide detector interchangeably, failing to clarify which was purportedly disconnected. While a smoke detector would alert to a fire, a carbon monoxide detector would not necessarily sound during a fire. The fire department captain allegedly "confirmed" a smoke detector was "inoperable," which is not the same thing as saying it was "disconnected." Rivera is alleged to have said that Islas Jr. told him to disconnect the "carbon monoxide detector," not the "smoke detector,"

and a carbon monoxide detector detects potentially lethal carbon monoxide releases, but not fire.

Second, even liberally construing the FAC, it is not plausibly alleged that a smoke detector or carbon monoxide detector was "disconnected" in some other resident's apartment to get Plaintiff out of his apartment. Absent a fire, Kemp would not know it had been disconnected. Further, there is no allegations that any detector of Plaintiff's was disconnected. It is not plausibly alleged that a Defendant disconnected a detector in Kemp's apartment to force Plaintiff out of his apartment. The allegations, without reaching the alleged racial animus, on their face are not plausible.

Accordingly, Plaintiff's Section 1981 claims appear subject to dismissal.

## C.   The FAC Fails to State a Title VI Claim

In Claims Four and Six, Plaintiff asserts claims for violation of Title VI against Islas, Jr., Islas, Islas-Enriquez, Wiese, Vasquez, Spooner, Contreras, Castillo, Arthur, Runkle, White, Ramirez, Logan Capital, Rosslyn Lofts, Logan Property, Amerland, Islas Development, Rosslyn Partners, Pacific Housing, Suffolk Development, and/or Chase. As best the Court can discern, Plaintiff's claims are based on the following: (1) property manager Contreras called him a "n*****" and "harassed" him as did Ramirez, an employee of the security company on site (FAC ¶¶ 87-88, 99); (2) a "false incident report" was made regarding an interaction with Contreras (id. ¶ 88); (3) a false emergency workplace restraining order was filed in retaliation for Plaintiff's complaints to the Los Angeles County Health and Housing Departments (id. ¶ 88); (4) Plaintiff has been denied the services of "utilizing management to conduct proper building property management" (id. ¶¶ 91, 106); (5) a false lease violation was issued and posted in public on Plaintiff's front door for harassing Contreras (id. ¶¶ 100, 102); (6) Caucasian residents are treated differently as they are not disrespected, their allegations are investigated, and

16

they are not subjected to retaliation for complaining about housing issues (id. ¶¶ 101, 106); and (7) an unlawful eviction was filed against Plaintiff in retaliation for him filing complaints with government agencies (id. ¶ 102).

Title VI prohibits discrimination in federally assisted programs and activities. Title VI provides that "[n]o person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000d. To state a claim for damages under Title VI, the plaintiff must allege the defendant entity is: (1) engaging in racial discrimination; and (2) is receiving federal financial assistance. Fobbs v. Holy Cross Health Sys. Corp., 29 F.3d 1439, 1447 (9th Cir. 1994) (citations omitted), overruled on other grounds by Daviton v. Columbia/HCA Healthcare Corp., 241 F.3d 1131, 1133 (9th Cir. 2001); Johnson v. HI Point Apts, LLC, 2017 WL 5634609, at *9 (C.D. Cal. Sept. 29, 2017), accepted by 2017 WL 5634100 (C.D. Cal. Nov. 20, 2017); Davison ex rel. Sims v. Santa Barbara High Sch. Dist., 48 F. Supp. 2d 1225, 1229 (C.D. Cal. 1998).

However, the proper defendant in a Title VI case is the entity receiving federal funds; individuals are not liable under Title VI. See Shotz v. City of Plantation, 344 F.3d 1161, 1169-71 (11th Cir. 2003); Price ex rel. Price v. La. Dep't of Educ., 329 F. App'x 559, 561 (5th Cir. 2009) (per curiam); Trotter v. Felix, 2019 WL 957647, at *2 (E.D. Cal. Feb. 27, 2019); Drawsand v. F.F. Props., L.L.P., 866 F. Supp. 2d 1110, 1122 (N.D. Cal. 2011). Thus, as an initial matter, it appears Plaintiff's Title VI claims against the individual defendants are subject to dismissal.

Further, an entity's liability is limited to its own misconduct. See United States v. County of Maricopa, 889 F.3d 648, 652 & n.2 (9th Cir. 2018) (explaining the Supreme Court has "interpreted Title IX consistently with Title

VI" and held that an entity's liability as to Title VI is limited to the entity's own misconduct). While an entity may not be held vicariously liable on a respondeat superior theory, it can be held liable under Title VI if an official with power to take corrective action is "deliberately indifferent to known acts" of discrimination. Id. at 652 (quoting Davis ex rel. LaShonda D. v. Monroe Cty. Bd. of Educ., 526 U.S. 629, 641 (1999)). An entity also may be held liable for acts of discrimination that result from its own official policy. Id.

As noted, Plaintiff largely refers to Defendants collectively, without explanation, making it difficult to determine how each entity purportedly violated Title VI. To the extent Plaintiff seeks to hold any of the defendants liable based merely on "vicarious[] liabil[ity]" (FAC ¶ 97), such theory is insufficient to state a Title VI claim. The FAC fails to allege facts showing directly or by reasonable inference that the entity defendants discriminated against Plaintiff on the basis of his race. Plaintiff has not made any factual allegations beyond conclusory statements to support an assertion that these defendants treated him differently from other residents outside his protected class. Plaintiff's threadbare allegations and personal belief that defendants' actions were racially motivated are purely conclusory and therefore, insufficient to state a plausible claim for relief. See Thomas v. S.F. Cmty. Coll. Dist., 708 F. App'x 398 (9th Cir. 2017).

In addition, Plaintiff has not sufficiently alleged that these defendants were receiving federal financial assistance. Plaintiff's mere allegation that Defendants receive "Federal funds and assistance" (FAC ¶ 85), which is conclusory in nature and lacking any factual support, is insufficient to show any particular defendant was receiving federal financial assistance to carry out a "program or activity" under Title VI. To the extent Plaintiff may be alleging that one or more defendants are receiving tax credits by virtue of his Lease, it appears tax credits do not constitute financial assistance. See Hall-Johnson v.

18

<u>City & Cty. of S.F.</u>, 2022 WL 2161602, at *3 (N.D. Cal. Jane 15, 2022) (explaining that tax credits do not constitute federal funding); <u>see also</u> <u>West v. Palo Alto Hous. Corp.</u>, 2019 WL 2549218, at *23 (N.D. Cal. June 20, 2019) (indicating that courts have uniformly determined that tax credits do not constitute financial assistance in the Rehabilitation Act context).

Accordingly, Plaintiff's Title VI claims appear subject to dismissal.

**D.   State Law Claims**

Plaintiff also asserts state law claims for breach of contract and fraud. This Order does not address the merits of Plaintiff's state law claims. When a federal court has dismissed all claims over which it has original jurisdiction, it may, at its discretion, decline to exercise supplemental jurisdiction over the remaining state law claims. 28 U.S.C. § 1367(c)(3); <u>Carlsbad Tech., Inc. v. HIF Bio, Inc.</u>, 556 U.S. 635, 639-40 (2009). Because Plaintiff's federal law claims appear subject to dismissal, supplemental jurisdiction over the state law claims may be declined.

**V.**

**CONCLUSION AND ORDER**

Based upon the deficiencies identified above, the FAC is subject to dismissal. **Within 21 days of this Order**, Plaintiff must choose one of the following options and file the document required by that option:

1.   If Plaintiff believes the deficiencies set forth above can be remedied, Plaintiff shall file a Second Amended Complaint attempting to remedy the defects of the FAC. Plaintiff's Second Amended Complaint should bear the docket number assigned in this case; be labeled "Second Amended Complaint"; be complete in and of itself without reference to the prior complaints or any other pleading, attachment, or document; comply with Rule 8(a)'s requirement of a "short and plain" statement of the claims; and

19

clearly and succinctly describe what each defendant allegedly did or failed to do, and the damage or injury suffered by Plaintiff as a result. **No new claims or defendants may be added to the amended complaint without prior approval of the Court.**

OR

2.    If Plaintiff disagrees with the above analysis and/or believes sufficient further factual allegations cannot be added to the FAC to remedy the deficiencies identified, then Plaintiff shall file a Notice of Intent to proceed with the FAC. If Plaintiff chooses to file such Notice of Intent, the Court may treat the election as a statement that Plaintiff is unable to amend the FAC to address the defects identified, which may result in dismissal of the action.

OR

3.    If Plaintiff no longer wishes to pursue this action, Plaintiff may dismiss it by filing a Notice of Dismissal under Federal Rule of Civil Procedure 41(a)(1). <u>The Clerk is directed to send Plaintiff a Central District request for dismissal form.</u>

**Plaintiff is cautioned that failure to timely file a fully compliant response as directed in this Order may result in the dismissal of this action for the foregoing reasons, failure to prosecute, and/or failure to comply with a court order.**

Dated: April 29, 2024 _____

_____
JOHN D. EARLY
United States Magistrate Judge

20