UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

CECIL ELMORE,

                Plaintiff,

                v.

RUBEN ISLAS, JR., et al.,

                Defendants.

Case No. 2:24-cv-01719-JLS-JDE

ORDER REGARDING SECOND AMENDED COMPLAINT

## I.

## INTRODUCTION

On March 1, 2024, Plaintiff Cecil Elmore ("Plaintiff"), proceeding pro se and in forma pauperis, filed a 531-page Complaint against 146 defendants, including Starbucks, Walmart, the Coco-Cola Company, Bank of America, Burger King, the Los Angeles Police Department, the City of Los Angeles, several security companies, several dentists and dental professional corporations, and 25 Doe defendants, listing 540 causes of action. Dkt. 1 ("Complaint"). While the specific allegations and details of the Complaint were confusing and difficult to follow, Plaintiff's primary contention appeared to be that the defendants are engaged in a racially-motivated conspiracy to subject

1

him to unlawful housing conditions, evict him from his apartment, and retaliate against him for reporting the uninhabitable housing conditions and initiating civil actions against them.

On March 26, 2024, after screening the Complaint in accordance with 28 U.S.C. § 1915(e)(2), the Court issued an order identifying apparent defects in the Complaint, including the failure to comply with Rule 8 of the Federal Rules of Civil Procedure ("Rule 8"), and providing Plaintiff with options as to how to proceed. Dkt. 5.

On April 16, 2024, Plaintiff filed a 106-page First Amended Complaint, including attachments. Dkt. 6 ("FAC"). Again, after screening the FAC in accordance with 28 U.S.C. § 1915(e)(2), on April 29, 2024, the Court issued an order identifying apparent defects in the FAC and providing Plaintiff with options as to how to proceed, including the option to file an amended complaint. Dkt. 11.

On May 20, 2024, Plaintiff filed an 80-page Second Amended Complaint, including attachments. Dkt. 12 ("SAC"). The SAC names the following 27 defendants: Ruben Islas Jr. ("Islas Jr."); Ruben Islas ("Islas"); Martha Islas-Enriquez ("Islas-Enriquez"); Jules Lucius Arthur ("Arthur"); Paul Runkle ("Runkle"); Bethany Spooner ("Spooner"); Michael Vasquez ("Vasquez"); Mark Wiese ("Wiese"); Aracelli Castillo ("Castillo"); Wendy Contreras ("Contreras"); Luther Gadson ("Gadson"); Gonzalo Rivera ("Rivera"); Logan Capital Advisors, LLC ("Logan Capital"); the Rosslyn Lofts Housing Partners, LP ("Rosslyn Lofts"); Logan Property Management, Inc. ("Logan Property"); the Amerland Group, LLC ("Amerland"); Islas Development, LLC ("Islas Development"); Suffolk Development, LLC ("Suffolk Development"); Pacific Housing, Inc. ("Pacific Housing"); Rosslyn Partners, LLC ("Rosslyn Partners"); Chase Protective Services, Inc. ("Chase"); Thomas Paul White ("White"); Jose Ramirez ("Ramirez"); Dewey Services, Inc. ("Dewey");

2

Theodore Victorio ("Victorio"); Gladys Boateng ("Boateng"); and Edgar Antonyan ("Antonyan") (collectively, "Defendants"). The focus of the SAC continues to be Plaintiff's allegedly unlawful housing conditions and efforts to evict him. Plaintiff seeks an order "enjoining Defendants from violating Federal and State Laws"; an order that state case nos. 21STRO00907 and 22STRO02187 "be permanently removed from all software systems and databases of Local, State and Federal agencies under Plaintiff name and whichever remedy suitable to permanently remove Workplace Restraining Orders off Plaintiff record of any sort"; a declaration that Defendants "have violated Federal and State Laws"; a declaration "for any Defendants who have defaulted for any violated Federal and State Laws"; monetary and punitive damages; and reasonable attorneys' fees and costs. SAC at 52-53.

Under 28 U.S.C. § 1915(e)(2), the Court must review the operative complaint "at any time" to determine if the action is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief from an immune defendant. For the reasons explained below, some of Plaintiff's claims still appear to be subject to dismissal.

## II.

### SUMMARY OF PLAINTIFF'S FACTUAL ALLEGATIONS

Plaintiff contends that this action arises out of the "wrongful and illegal conduct" occurring at the Rosslyn Lofts apartment building, where he is a resident. SAC ¶¶ 7, 38. Plaintiff is African American and has a "Tax Credit Lease Contract" ("Lease") for his apartment at Rosslyn Lofts. Id. ¶¶ 6-7, 47, 107. Rosslyn Lofts receives local, state, and federal funding, and is owned by Islas Jr. and Islas. Id. ¶¶ 7-10, 12, 46-49.

Plaintiff claims that, since at least October 23, 2020, Defendants have "systemically and intentionally worked to remove Plaintiff as a tenant" by "intentionally, racially, discriminating against [him] for being African

3

American and not treating [his Lease] with the same enjoyment, rights, privileges, duties, and terms as Caucasian residents." SAC ¶¶ 41, 42. He alleges he was denied pest control, security and management services, and an operable carbon monoxide/smoke detector based on his race, and retaliated against for seeking such services. He also claims that three fraudulent inspection reports were submitted to the Los Angeles County Public Health Department ("Public Health Department") regarding Rosslyn Lofts. He contends "[i]mmediate and meaningful intervention" is required as Defendants have filed two false workplace restraining orders and two false unlawful detainers against him with the intent to evict him. Id. ¶ 51. He alleges at least six African American residents were forced out of the Rosslyn Lofts while he has been a resident. Id.

## A.    Pest Control Services

On October 23, 2020, Plaintiff requested pest control services from his property manager, Contreras. Contreras allegedly stated that Plaintiff "will not be allowed pest control service performance . . . for the reason of Plaintiff being African American," adding Plaintiff did not "deserve" pest control services "because he is a 'n*****,'" unlike Caucasian residents. Contreras also allegedly said that she, Islas Jr., Islas, Islas-Enriquez, Arthur, Runkle, Vasquez, Wiese, Spooner, Rosslyn Lofts, Rosslyn Partners, Amerland Group, Pacific Housing, Logan Property, Logan Capital, Suffolk Development, Islas Development, and Dewey "are not going to enforce" Plaintiff's Lease and he would not receive pest control services "as Defendants are going to issue Plaintiff Tax Credit Lease Violation to terminate Plaintiff . . . Contract for being African American." SAC ¶ 61. Prior to October 23, 2020, Plaintiff had complained to Castillo and Vasquez on "numerous occasions" regarding Contreras and Plaintiff being called a "n*****," but he was ignored. Id. ¶ 62.

Plaintiff also requested pest control services from Vasquez, but Vasquez responded that Plaintiff was a "n*****" and would not be getting any pest

control services and "needs to get the "f*** out from living" in the Rosslyn Lofts as Islas Jr., Islas, Islas-Enriquez, Arthur, Runkle, Vasquez, Wiese, Spooner, Rosslyn Lofts, Rosslyn Partners, Amerland Group, Pacific Housing, Logan Property, Logan Capital, Suffolk Development, Islas Development, Castillo, and Contreras "do not want African American's who request pest control service to continue living at the apartment building." SAC ¶ 64. Vasquez allegedly told Plaintiff that Caucasian residents would get pest control services, which Plaintiff has witnessed, but Plaintiff, along with African American residents, would not receive such services. Id. ¶¶ 64-65. Vasquez told Plaintiff he would be issued a Tax Credit Lease Violation for "requesting pest control services[.]" Id. ¶ 64.

On October 28, 2020, Contreras placed a Notice to Perform Covenant or Quit (Tax Credit Lease Contract Violation) on Plaintiff's door, which falsely described Plaintiff "as a violent African American." SAC ¶¶ 67-68.

On February 22, 2021, Plaintiff requested pest control services from Castillo. She responded that she, Islas Jr., Islas, Islas-Enriquez, Arthur, Runkle, Wiese, Spooner, Rosslyn Lofts, Rosslyn Partners, Amerland, Logan Property, Logan Capital, Pacific Housing, Suffolk Development, Islas Development, Vasquez, and Contreras "agreed and decided to deny Plaintiff pest control services for being African American," notifying him that he does not have the same "rights and privileges as Caucasian residents." SAC ¶ 99. The next day, Rosslyn Lofts, Logan Property, Contreras, Vasquez, Castillo, and Gadson filed and obtained a temporary workplace restraining order against Plaintiff, containing false statements. Such restraining order was obtained in retaliation for Plaintiff requesting that he be provided the same benefits under his Lease as Caucasian residents. Id. ¶ 100.

On February 26, 2021, Contreras had Dewey conduct pest control services for a Caucasian male resident, during which Contreras "came beyond

5

the Court Ordered amount of distance ordered against Plaintiff" and was not escorted by the police or Chase. SAC ¶ 102. Plaintiff was denied pest control services after "Russ," a Dewey employee, told Plaintiff they "are not giving your black ass any pest control services." Id. ¶ 103.

**B.      Security and Management Services**

On November 20, 2020, Plaintiff was in the elevator at Rosslyn Lofts with Gurkirn Hundal and two other African Americans when a Caucasian resident wearing a face mask said there were "too many black people on the elevator," called Plaintiff a "dirty black boy," and threatened to slap Plaintiff in the face. SAC ¶ 80. This same resident also called Plaintiff a "dirty n*****" when he was outside the Rosslyn Lofts apartment building. The resident did not file a police report against Plaintiff for any criminal acts or threats. Id. Plaintiff complained to Castillo, who allegedly responded that Islas Jr., Islas, Islas-Enriquez, Vasquez, Wiese, Rosslyn Lofts, Rosslyn Partners, Logan Property, Logan Capital, Amerland, Suffolk Development, Islas Development, Pacific Housing, and Contreras "commanded" Castillo "to not enforce" Plaintiff's Lease "for being African American." Id. ¶ 81. Castillo stated that she was not going to give the Caucasian resident a lease violation or terminate her contract "because Plaintiff is an African American resident" and instead, Plaintiff would be issued a Tax Credit Lease Contract Violation. Id. Castillo further stated that Plaintiff does not have "the same privileges, benefits, and enforcement as Caucasian residents at" the Rosslyn Lofts. Id. On December 2, 2020, Castillo placed a Tax Credit Lease Violation, Ten (10) Day Notice to Quit on Plaintiff's apartment door, alleging "false, untrue, defamatory events against Plaintiff regarding the Caucasian female resident on November 20, 2020." Id. ¶ 82.

On February 10, 2021, Plaintiff filed a complaint with the California Department of Fair Employment and Housing ("Fair Housing Complaint")

against Logan Property, Rosslyn Lofts, and Contreras for racially discriminating against him, referencing the October 23, 2020 incident. SAC ¶ 91. On February 16, 2021, Contreras, Rosslyn Lofts, and Logan Property were served with the Fair Housing Complaint. Id. ¶ 92. The following day, while at the Rosslyn Lofts, Plaintiff requested security services from Ramirez, a security guard for Chase, to stop resident Robert Kemp ("Kemp") from harassing him. Kemp had been "naked, yelling, banging aggressively, and turning the doorknob with the intent to unlawfully enter Plaintiff['s] apartment unit as Plaintiff denied" Kemp permission to enter his apartment. Id. ¶ 93. Ramirez responded that Plaintiff was a "n*****," he does not work for "n*****s" and Plaintiff, and he performs security services for white residents. He told him that White, the owner of Chase, "agreed" with Islas Jr., Islas, Islas-Enriquez, Arthur, Runkle, Vasquez, Wiese, Spooner, Rosslyn Lofts, Rosslyn Partners, Amerland, Pacific Housing, Logan Property, Logan Capital, Suffolk Development, Islas Development, Castillo, and Contreras "to deny Plaintiff security services for being African American." Id. The same day, a false incident report was issued against Plaintiff accusing him of making fun of Contreras. Id. ¶ 94.

On February 18, 2021, Plaintiff reported to Contreras that Kemp was "constantly sexually harassing" him. He explained that Kemp came to his door without any clothes and exposed himself to Plaintiff. Plaintiff told Contreras he was "in fear for his safety" and needed assistance from the owners and management to ensure his safety. SAC ¶ 95. Contreras responded that Islas Jr., Islas, Islas-Enriquez, Arthur, Runkle, Wiese, Vasquez, Rosslyn Lofts, Rosslyn Partners, Logan Capital, Logan Property, Suffolk Development, Islas Development, Amerland, and Pacific Housing "will not be enforcing [Plaintiff's Lease] for being a 'n*****.'" Id. ¶ 96. Contreras allegedly said, "a 'n*****' like you doesn't deserve to receive any services from your Tax

7

Credit Lease Contract"; and told Plaintiff she did not have to assist him as he was not white. Contreras told Plaintiff she was going to file a restraining order against Plaintiff for "being a 'n*****' and constantly asking for services and duties from management." When Plaintiff protested that he has the same rights as Caucasian residents, Contreras responded that "you are black, you are not white so you do not have the same rights, privileges, terms, and conditions as Caucasian residents." Id. Plaintiff witnessed Contreras providing security services for another resident, a Caucasian female resident. Id. ¶ 97.

The next day, Plaintiff requested Vasquez to stop Kemp from sexually harassing him and unlawfully invading his apartment. Vasquez responded that he, Islas Jr., Islas, Islas-Enriquez, Arthur, Runkle, Wiese, Spooner, Contreras, Castillo, Rosslyn Lofts, Rosslyn Partners, Logan Property, Logan Capital, Amerland, Pacific Housing, Suffolk Development, and Islas Development "agreed and will not enforce [Plaintiff's Lease] the same as Caucasian residents." SAC ¶ 114. Vasquez told Plaintiff he would be issued a Tax Credit Lease Violation "for being African American and asking for Tax Credit Lease Contract to be enforced the same as Caucasian residents." Id. ¶ 115. He further informed Plaintiff that Rosslyn Lofts was served with his Fair Housing Complaint; they "don't care"; and they are "still going to give [him a] lease violation for being a 'n*****'" and evict him "one way or another for being African American[.]" Id. That same day, Ramirez placed a Tax Credit Lease Violation on Plaintiff's apartment door. Id. ¶ 116.

**C.      Operable Carbon Monoxide/Smoke Detector**

Plaintiff complained to Contreras, Castillo, Vasquez, Rosslyn Lofts, and Logan Property that Kemp's "carbon monoxide/smoke detector alarm" was going off excessively. SAC ¶ 132. On at least two occasions, smoke was coming from underneath Kemp's apartment door into the hallway and Plaintiff's apartment. Id. ¶ 133. Plaintiff complained to Contreras, Castillo,

Vasquez, Rivera, Rosslyn Lofts, and Logan Property that his "carbon monoxide/smoke detector" was not sounding when smoke from Kemp's unit entered his apartment. Id. ¶ 134. Plaintiff requested that Vasquez inspect and repair his "carbon monoxide/smoke detector," but Vasquez allegedly stated that "you are black we are not inspecting and repairing your apartment unit carbon monoxide/smoke detector." Id. ¶ 135. Plaintiff contends that Vasquez stated Rosslyn Lofts, Logan Property, Islas Jr., Islas, Islas-Enriquez, Arthur, Runkle, Spooner, Amerland, Rosslyn Partners, Logan Capital, Pacific Housing, Wiese, Suffolk Development, and Islas Development "commanded to not inspect, repair and test Plaintiff carbon monoxide detector/smoke detector for Plaintiff being a 'n*****.'" Plaintiff saw Rivera test a Caucasian resident's "carbon monoxide/smoke detector," but when he requested that Rivera test and repair his, Rivera responded, "we don't test and repair carbon monoxide/smoke detector for n*****s like you," and Islas Jr., Islas, Vasquez, Contreras, and Castillo "told" him not to service his "carbon monoxide/smoke detector." Id. ¶¶ 135-36, 141. Rivera did not test or repair Plaintiff's "carbon monoxide/smoke detector." Id. ¶ 136.

On March 15, 2021, a Caucasian resident "searched the apartment level for the noise of a carbon monoxide/smoke detector alarm sounding on," went to Plaintiff's apartment, and stated that the "carbon monoxide/smoke detector alarm has been sounding excessively and that he is going to report this issue to management." SAC ¶ 138. Plaintiff saw Rivera enter Kemp's apartment with a ladder and disconnect the "carbon monoxide/smoke detector." While Rivera was inside Kemp's apartment, Plaintiff heard the "carbon monoxide/smoke detector" sounding, and then moments later, it stopped. Plaintiff never heard Kemp's "carbon monoxide/smoke detector" go off again. Id. ¶ 139. When Plaintiff reported this to Ramirez, Ramirez stated, "it doesn't matter n*****, it's off." Id. ¶ 140.

On April 4, 2021, an excessive amount of smoke from Kemp's apartment entered the hallway and Plaintiff's apartment unit, but his "carbon monoxide/smoke detector" did not sound. Plaintiff called 911 and the Los Angeles Fire Department responded. Captain Abraham Tapia stated that "the carbon monoxide/smoke detector did not alarm/alert sound[.]" SAC ¶ 142.

## D.    Fraudulent Inspection Reports

Plaintiff alleges that on April 16, 2021, an employee with Dewey, a pest control company, wrote a fraudulent quality inspection report regarding Plaintiff's apartment unit. SAC ¶ 154. When Plaintiff asked Gadson, a purported employee of multiple Defendants, why Dewey submitted this fraudulent report to the Public Health Department, Gadson stated that Islas, Islas-Enriquez, Arthur, Runkle, Rosslyn Lofts, Rosslyn Partners, Logan Property, Logan Capital, Pacific Housing, Amerland, Suffolk Development, and Islas Development "had" the report submitted "so we can get you out of that apartment unit." Id. ¶¶ 28, 155. He claims this report was filed in retaliation for Plaintiff filing the Fair Housing Complaint. Id. ¶ 159.

Additionally, on May 3, 2021, Boateng and Victorio, inspectors with the Public Health Department, conducted a health inspection after Plaintiff complained to the Public Health Department about a pest infestation and uninhabitable living conditions at Rosslyn Lofts. SAC ¶¶ 29, 31, 163-64. Plaintiff witnessed the inspection during an active pest infestation. Id. ¶¶ 165, 167. However, Boateng and Victorio wrote and filed a fraudulent inspection report reflecting there were no pests present during the inspection. Id. ¶ 168. Plaintiff claims that Boateng and Victorio stated to Plaintiff that Islas Jr., Islas, Islas-Enriquez, Arthur, Runkle, Wiese, Vasquez, Rosslyn Lofts, Rosslyn Partners, Amerland Group, Logan Capital, Logan Property, Pacific Housing, Suffolk Development, and Islas Development "agreed to have an inaccurate, fraudulent Health Inspection Report." Id.        ¶ 174.

10

After Plaintiff filed a complaint with the Public Health Department about a pest infestation and uninhabitable living conditions, Antonyan, another inspector for the Public Health Department, conducted an inspection on December 8, 2021. SAC ¶¶ 32, 179-80. During the inspection, Antonyan witnessed a cockroach infestation, but filed a false inspection report with the Public Health Department that did not notate the active pest infestation at Rosslyn Lofts. Id. ¶¶ 181-82, 188. When Plaintiff asked Vasquez about this, Vasquez told him that Islas Jr., Islas, Islas-Enriquez, Arthur, Runkle, Rosslyn Lofts, Logan Property, Amerland, Logan Capital, Suffolk Development, Islas Development, Rosslyn Partners, Pacific Housing, and Wiese "ordered" Antonyan "to construct and file a fraudulent Official Inspection Report[.]" Id. ¶ 183. This was allegedly done in retaliation for Plaintiff's complaints regarding pest infestations and uninhabitable living conditions. Id. ¶ 190.

Plaintiff claims the false inspection reports were "utilize[d]" to file false unlawful detainers against him. SAC ¶ 50.

Plaintiff asserts five claims for violations of 42 U.S.C. § 1981 ("Section 1981"), two claims for violation of Title VI of the Civil Rights Act of 1964 ("Title VI"), and state law claims for breach of contract and fraud.

### III.

### STANDARD OF REVIEW

A complaint may be dismissed for failure to state a claim for two reasons: (1) lack of a cognizable legal theory; or (2) insufficient facts under a cognizable legal theory. Mendiondo v. Centinela Hosp. Med. Ctr., 521 F.3d 1097, 1104 (9th Cir. 2008). Pleadings by pro se plaintiffs are reviewed liberally and afforded the benefit of the doubt. Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam); see also Hebbe v. Pliler, 627 F.3d 338, 342 (9th Cir. 2010) (as amended). However, "a liberal interpretation of a civil rights complaint may not supply essential elements of the claim that were not initially pled."

11

Bruns v. Nat'l Credit Union Admin., 122 F.3d 1251, 1257 (9th Cir. 1997) (citation omitted). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

In assessing whether a complaint states a viable claim, the Court applies the same standard as it would when evaluating a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)"). See Rosati v. Igbinoso, 791 F.3d 1037, 1039 (9th Cir. 2015) (per curiam). Rule 12(b)(6), in turn, is read in conjunction with Rule 8(a). Zixiang Li v. Kerry, 710 F.3d 995, 998-99 (9th Cir. 2013). Under Rule 8, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Rule 8(a)(2). Though Rule 8 does not require detailed factual allegations, at a minimum, a complaint must allege enough specific facts to provide both "fair notice" of the particular claim being asserted and "the grounds upon which [that claim] rests." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 & n.3 (2007) (citation omitted); see also Iqbal, 556 U.S. at 678 (observing that Rule 8 standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation"); Brazil v. U.S. Dep't of Navy, 66 F.3d 193, 199 (9th Cir. 1995) (finding that even pro se pleadings "must meet some minimum threshold in providing a defendant with notice of what it is that it allegedly did wrong"); Schmidt v. Herrmann, 614 F.2d 1221, 1224 (9th Cir. 1980) (upholding Rule 8 dismissal of "confusing, distracting, ambiguous, and unintelligible pleadings").

Thus, to survive screening, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 570). A claim is "plausible" when the facts alleged support a reasonable inference that the plaintiff is entitled to relief from a specific defendant for specific misconduct.

Id. Allegations that are "merely consistent with" a defendant's liability, or reflect only "the mere possibility of misconduct" do not show "that the pleader is entitled to relief," and thus are insufficient to state a claim that is "plausible on its face." Id. at 678-79 (citations omitted). "Taken together, Iqbal and Twombly require well-pleaded facts, not legal conclusions that 'plausibly give rise to an entitlement to relief.' The plausibility of a pleading thus derives from its well-pleaded factual allegations." Whitaker v. Tesla Motors, Inc., 985 F.3d 1173, 1176 (9th Cir. 2021) (citations omitted).

If the Court finds that a complaint should be dismissed for failure to state a claim, the Court has discretion to dismiss with or without leave to amend. See Lopez v. Smith, 203 F.3d 1122, 1126-30 (9th Cir. 2000) (en banc). Leave to amend should be granted if it appears possible that the defects in the complaint could be corrected, especially if a plaintiff is pro se. Id. at 1130-31; see also Cato v. United States, 70 F.3d 1103, 1106 (9th Cir. 1995) (noting that "[a] pro se litigant must be given leave to amend his or her complaint, and some notice of its deficiencies, unless it is absolutely clear that the deficiencies of the complaint could not be cured by amendment"). However, if, after careful consideration, it is clear that a complaint cannot be cured by amendment, the Court may dismiss without leave to amend. See, e.g., Chaset v. Fleer/Skybox Int'l, 300 F.3d 1083, 1088 (9th Cir. 2002) (holding that "there is no need to prolong the litigation by permitting further amendment" where the "basic flaw" in the pleading cannot be cured by amendment).

## IV.

## DISCUSSION

**A.   Section 1981 Claims (Claims One Through Three, Five, and Seven)**

Section 1981(a) provides:

All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce

contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

To state a Section 1981 claim, the plaintiff must allege: (1) he is a member of a racial minority; (2) the defendant had an intent to discriminate on the basis of race; and (3) the discrimination concerned one or more of the activities enumerated in the statute. Keum v. Virgin Am. Inc., 781 F. Supp. 2d 944, 954 (N.D. Cal. 2011). The plaintiff must prove purposeful discrimination. See Gen. Bldg. Contractors Ass'n v. Pennsylvania, 458 U.S. 375, 389-91 (1982); see also DeHorney v. Bank of Am. Nat'l Tr. & Sav. Ass'n, 879 F.2d 459, 467 (9th Cir. 1989) (per curiam) ("to establish a § 1981 claim, the plaintiff must prove intentional or purposeful discrimination"). "To prevail, a plaintiff must initially plead and ultimately prove that, but for race, [he] would not have suffered the loss of a legally protected right." Comcast Corp. v. Nat'l Ass'n of African Am.-Owned Media, 589 U.S. 327, 341 (2020).

Section 1981(a)'s protection of the right "to make and enforce contracts" includes discrimination related to the leasing of rental property. See S. Cal. Hous. Rts. Ctr. v. Villa Caprice, L.P., 2018 WL 6016137, at *4 (C.D. Cal. Feb. 23, 2018) (citing Smith v. Heritage Ranch Owners Ass'n, 2010 WL 11459833, at *5 (C.D. Cal. Jan. 26, 2010)). Section 1981(b) defines "make and enforce contracts" to include "the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." The plaintiff must identify the impaired contractual relationship and "injuries flowing from a racially motivated breach of [his] own contractual relationship[.]" Domino's Pizza, Inc. v. McDonald, 546 U.S. 470, 476, 480 (2006).

14

Here, Plaintiff alleges Islas Jr., Islas, Islas-Enriquez, Wiese, Arthur, Runkle, White, Vasquez, Spooner, Contreras, Castillo, Rivera, Ramirez, Logan Capital, Rosslyn Lofts, Logan Property, Amerland, Islas Development, Rosslyn Partners, Pacific Housing, Chase, Suffolk Development, and Dewey violated Section 1981 by failing to enforce his Lease based on racial discrimination.

As to Vasquez, Castillo, Contreras, Rivera, and Ramirez, Plaintiff has described specific instances in which these defendants denied him pest control, security and management services, and/or an operable carbon monoxide/smoke detector based on his race. In addition, Plaintiff also alleged he was denied pest control services when "Russ," who is not named as a defendant and is alleged to be an employee of Dewey and only Dewey, told Plaintiff, "we are not giving your black ass any pest control services," by which Plaintiff alleges that Dewey denied him pest control service at his apartment based on his race. SAC ¶¶ 25, 103. As to Vasquez, Castillo, Contreras, Rivera, Ramirez, and Dewey, it appears Plaintiff has sufficiently stated Section 1981 claims for screening purposes, without prejudice to any defendant raising any challenge to the SAC, including a challenge based on failure to state a claim.

As to the remaining defendants, the SAC's allegations do not appear to state a Section 1981 claim. Plaintiff continues to refer to Defendants collectively, often making broad, sweeping assertions that they all "agreed" and/or all "commanded" the wrongful acts. Plaintiff also makes similar "group" allegations about which Defendants owned and/or operated which other Defendants, rending the allegations variously internally inconsistent, unclear, and/or implausible. For example, Plaintiff alleges that Rosslyn Lofts is Plaintiff's landlord (SAC ¶ 8), but one paragraph later alleges that Islas Jr. is his landlord (id. ¶ 9), yet one paragraph later alleges that Islas is his landlord (id. ¶ 10), and four paragraphs later appears to allege that Amerland does

15

business at Rosslyn Lofts as "landlord and owner" (id. ¶ 14). Similarly, the SAC alleges Vasquez, Castillo, Contreras, Rivera, and Ramirez are "employee[s] of" several different companies and individuals at the same time, without specifying on whose behalf, if any, Vasquez, Castillo, Contreras, Rivera, or Ramirez were acting when interacting with Plaintiff. See, e.g., id. ¶ 20 (alleging Vasquez is employed by or "takes command . . . from" 13 different individuals or entities, including at least one entity that is not a defendant in the action, Alexandria Housing Partners L.P.); see also id. ¶ 24 (alleging Ramirez was employed by or provided services for Chase and White), ¶ 26 (alleging Contreras was employed by or "takes command . . . from" 13 different individuals or entities), ¶ 27 (alleging Castillo was employed by 13 different persons or entities), ¶ 30 (alleging Rivera was employed by 15 different persons or entities), ¶ 93 (alleging Ramirez was employed by Chase and White and working for 18 additional persons or entities). Such litanies of possible "employers," without further plausible specification on whose behalf those individuals acted at the time of their alleged interactions with Plaintiff render potential claims against those "employers" deficient under Rule 8.

In addition, as in the FAC, the SAC includes defendants with unexplained, tenuous, or implausible connections to the alleged claims based solely on conclusory allegations of conspiracy, aiding and abetting, agency, "unity of ownership," "control," or "alter ego" liability. See, e.g., SAC ¶¶ 52, 56, 67. For instance, as to Logan Capital, Logan Property, Amerland, Islas Development, Rosslyn Partners, and Suffolk Development, these defendants appear to be named on the basis that other individual defendants own these entities. Plaintiff has not alleged facts describing their specific roles and responsibilities in relationship to his Lease or any specific discriminatory conduct. Again, Plaintiff cannot circumvent the requirement to allege individual causation by simply referring to Defendants collectively, or relying

16

on unsupported assertions that Defendants are all "responsible" for the allegedly unlawful acts.

Plaintiff similarly seeks to hold Wiese, White, Islas-Enriquez, Spooner, Arthur, and Runkle liable based on conclusory allegations that they "agreed" or "commanded" the wrongful acts. But to state a Section 1981 claim, a plaintiff must allege that the defendant was personally involved in the wrongful conduct. See Scott v. S.F. Unified Sch. Dist., 2013 WL 6185598, at *5 (N.D. Cal. Nov. 26, 2013); Byrd v. California Superior Court, 2009 WL 2031761, *7 (N.D. Cal. July 8, 2009); see also Mayfield v. County of Merced, 2014 WL 2574789, at *9 (E.D. Cal. June 9, 2014) (explaining that supervisors may be held liable if they were personally involved in the constitutional deprivation, or if there was a sufficient causal connection between their wrongful conduct and the constitutional violation). Thus, Plaintiff must allege specific facts as to each defendant's actions and how they relate to the discriminatory acts described in the SAC. See Topadzhikyan v. Glendale Police Dep't, 2010 WL 11459356, at *2 (C.D. Cal. Oct. 26, 2010). Plaintiff has not made any factual allegations that these defendants personally discriminated against him or explained how they were personally involved in the discriminatory actions. Plaintiff's threadbare allegations referring to Defendants collectively, without differentiation or explanation, are insufficient to state a plausible claim for relief.

In sum, solely for screening purposes, Plaintiff has minimally stated Section 1981 claims against Vasquez, Castillo, Contreras, Rivera, Ramirez, and Dewey. However, nothing precludes these defendants from raising any argument or defense in future proceedings, including arguments that the SAC fails to state a claim or is barred by the applicable statute of limitations.

**B.   Title VI Claims (Claims Four and Six)**

Title VI bars discrimination in federally assisted programs and activities. Title VI provides that "[n]o person in the United States shall, on the ground of

17

race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000d. To state a claim for damages under Title VI, a plaintiff must allege a defendant entity: (1) engages in racial discrimination; and (2) receives federal financial assistance. Fobbs v. Holy Cross Health Sys. Corp., 29 F.3d 1439, 1447 (9th Cir. 1994), overruled on other grounds by Daviton v. Columbia/HCA Healthcare Corp., 241 F.3d 1131, 1133 (9th Cir. 2001) (en banc); Johnson v. HI Point Apts, LLC, 2017 WL 5634609, at *9 (C.D. Cal. Sept. 29, 2017), accepted by 2017 WL 5634100 (C.D. Cal. Nov. 20, 2017); Davison ex rel. Sims v. Santa Barbara High Sch. Dist., 48 F. Supp. 2d 1225, 1229 (C.D. Cal. 1998).

Plaintiff asserts two claims against Rosslyn Lofts for violations of Title VI based on the allegations that he was intentionally denied pest control, security, and management services based on his race. Unlike in his Section 1981 claims, Rosslyn Lofts is the sole alleged defendant and Plaintiff directly alleges that Vasquez, Castillo, and Contreras were acting solely as employees of Rosslyn Lofts when they committed racially discriminatory acts in connection with services provided by an entity receiving federal funds. See, e.g., SAC ¶¶ 107-110. Solely for purposes of screening, the SAC's allegations appear minimally sufficient, at this stage, to pass screening for a violation of Title VI against Rosslyn Lofts. Nothing precludes Rosslyn Lofts from raising any argument or defense in future proceedings, including arguments that the SAC fails to state a claim or is barred by the applicable statute of limitations.

## C.   State Law Claims

### 1.   Breach of Contract Claim (Claim Eight)

To state a breach of contract claim under California law, there must be (1) a contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) damages to plaintiff. Coles v. Glaser, 2 Cal. App.

18

5th 384, 391 (2016). "[A] contract must be sufficiently definite, so that the court may 'ascertain the parties' obligations and . . . determine whether those obligations have been performed or breached.'" Pfeister v. Int'l Bus. Machines Corp., 2017 WL 4642436, at *3 (N.D. Cal. Oct. 16, 2017) (alteration in original) (quoting Ersa Grae Corp v. Fluor Corp., 1 Cal. App. 4th 613, 623 (1991)). "If . . . a supposed 'contract' does not provide a basis for determining what obligations the parties have agreed to, and hence does not make possible a determination of whether those agreed obligations have been breached, there is no contract." Weddington Prods., Inc. v. Flick, 60 Cal. App. 4th 793, 811 (1998); see also Cal. Lettuce Growers, Inc. v. Union Sugar Co., 45 Cal. 2d 474, 481 (1955) ("Where a contract is so uncertain and indefinite that the intention of the parties in material particulars cannot be ascertained, the contract is void and unenforceable."). Further, a "contract cannot bind a nonparty," EEOC v. Waffle House, Inc., 534 U.S. 279, 294 (2002), and "directors and officers are not personally liable on contracts signed by them for and on behalf of the corporation unless they purport to bind themselves individually." U.S. Liab. Ins. Co. v. Haidinger-Hayes, Inc., 1 Cal. 3d 586, 595 (1970).

Plaintiff asserts a breach of contract claim against Islas Jr., Islas, Islas-Enriquez, Arthur, Runkle, Contreras, Rosslyn Lofts, Logan Property, Logan Capital, Suffolk Development, Islas Development, Amerland, Pacific Housing, Wiese, and Rosslyn Partners, claiming that these defendants breached the fair housing, property inspection, pest control, unlawful activity, and carbon monoxide and smoke detector provisions in his Lease. SAC ¶ 149. However, as in the prior complaints, Plaintiff still has not identified the parties to his Lease. Although he claims his Lease is "with" Rosslyn Lofts, Rosslyn Partners, Islas Jr., Islas, Islas-Enriquez, Pacific Housing, Wiese, and Contreras (SAC ¶ 59), he does not identify the actual signatories to the Lease or provide sufficient information to allow the Court to determine these defendants'

specific obligations under the Lease terms. Nor has he alleged that he complied with the terms of the Lease or offer an excuse for nonperformance. Furthermore, as explained, a contract cannot bind a nonparty. As Plaintiff makes no allegation that Arthur, Runkle, Contreras, Logan Property, Logan Capital, Suffolk Development, Islas Development, and Amerland were parties to the Lease, these defendants cannot be held liable for breach of the Lease.

As pled, it appears Plaintiff has not stated a breach of contract claim.

2.     Fraud Claims (Claims Nine Through Eleven)

To state a claim for fraud under California law, the plaintiff must allege: "(1) a misrepresentation (false representation, concealment, or nondisclosure); (2) knowledge of falsity (or scienter); (3) intent to defraud, i.e., to induce reliance; (4) justifiable reliance; and (5) resulting damage." Robinson Helicopter Co. v. Dana Corp., 34 Cal. 4th 979, 990 (2004). To establish reliance, the plaintiff must show that he actually relied on the defendant's misrepresentations, and he was reasonable in doing so. OCM Principal Opportunities Fund v. CIBC World Markets Corp., 157 Cal. App. 4th 835, 863 (2007) (as modified). This requires the plaintiff to "establish a complete causal relationship" between the alleged misrepresentations and the harm that allegedly resulted therefrom. Id. at 864 (citation omitted).

Further, a plaintiff "must state with particularity the circumstances constituting fraud . . . ." Fed. R. Civ. P. 9(b). Thus, "a pleading must identify the who, what, when, where, and how of the misconduct charged, as well as what is false or misleading about the purportedly fraudulent statement, and why it is false." Davidson v. Kimberly-Clark Corp., 889 F.3d 956, 964 (9th Cir. 2018) (as amended) (citation omitted). The pleading must identify the circumstances constituting fraud so "a defendant can prepare an adequate answer from the allegations." Moore v. Kayport Package Express, Inc., 885 F.2d 531, 540 (9th Cir. 1989). In a case involving multiple defendants, Rule

20

9(b) does not permit a complaint to "merely lump multiple defendants together," but instead, requires that the plaintiffs "differentiate their allegations" and "inform each defendant separately of the allegations surrounding his alleged participation in the fraud." Swartz v. KPMG LLP, 476 F.3d 756, 764-65 (9th Cir. 2007) (citation omitted). "[A] plaintiff must, at a minimum, 'identif[y] the role of [each] defendant[ ] in the alleged fraudulent scheme.'" Id. (alterations in original) (citation omitted). A plaintiff "must provide each and every defendant with enough information to enable them 'to know what misrepresentations are attributable to them and what fraudulent conduct they are charged with.'" Pegasus Holdings v. Veterinary Ctrs. of Am., Inc., 38 F. Supp. 2d 1158, 1163 (C.D. Cal. 1998) (citation omitted).

Plaintiff asserts fraud claims against Dewey, Gadson, Islas Jr., Islas, Islas-Enriquez, Arthur, Runkle, Rosslyn Lofts, Logan Property, Amerland, Logan Capital, Suffolk Development, Islas Development, Pacific Housing, Wiese, Rosslyn Partners, Victorio, Boateng, and Antonyan based on the allegedly fraudulent inspection reports submitted to the Public Health Department. SAC ¶¶ 152-92. As pled, the SAC's allegations are insufficient to state a fraud claim. First, Plaintiff has not differentiated most of the defendants, describing each defendant's role in the alleged fraud. Plaintiff's conclusory allegations that Defendants collectively "commanded" or "ordered" the construction of the allegedly fraudulent documents, or "agreed" to the fraudulent documents (see, e.g., SAC ¶ 153, 169, 175, 183) are not supported by any plausible factual allegations, sufficient to notify each defendant of its alleged participation in the fraud. Additionally, Plaintiff has not alleged that he relied on the alleged misrepresentations in a manner that caused him harm. See Spann v. C.R. England, Inc., 2018 WL 11354590, at *4 (C.D. Cal. Aug. 22, 2018) (explaining that "general principles of fraud require that the party entitled to relief was the recipient of the fraudulent

misrepresentation (citing Restatement (Second) of Torts § 537 (1977)). Furthermore, although Plaintiff claims that Defendants misrepresented the results of the inspections, he does not allege the misrepresentations with specificity. Thus, it appears Plaintiff fails to state a fraud claim.

## V.

## CONCLUSION AND ORDER

As indicated above, for screening purposes only, based on the allegations of the SAC, it appears Plaintiff has sufficiently stated (a) Section 1981 claims against Vasquez, Castillo, Contreras, Rivera, Ramirez, and Dewey; and (b) Title VI claims against Rosslyn Lofts. Plaintiff's remaining claims appear subject to dismissal. Accordingly, the Court provides Plaintiff with the following options regarding how to proceed. **Within 21 days of this Order**, Plaintiff must choose one of the following options and file the document required by that option:

1.      If Plaintiff desires to proceed only with his Section 1981 claims against Vasquez, Castillo, Contreras, Rivera, Ramirez, and Dewey and Title VI claims against Rosslyn Lofts, Plaintiff need only file a document titled "Notice of Election" stating that he elects to proceed only on these claims and not as to any other claim, with the other claims and Defendants voluntarily dismissed. Upon timely receipt of a compliant Notice of Election, the Court will direct the Clerk to issue a summons as to Vasquez, Castillo, Contreras, Rivera, Ramirez, Dewey, and Rosslyn Lofts and will commence the process of directing service upon these defendants by the United States Marshal, with Plaintiff's assistance, with Plaintiff reminded that he bears the ultimate burden to provide sufficient information to permit service.

/ / /

22

2.   If Plaintiff believes the deficiencies set forth above can be remedied, Plaintiff shall file a Third Amended Complaint attempting to remedy the defects of the SAC. Plaintiff's Third Amended Complaint should bear the docket number assigned in this case; be labeled "Third Amended Complaint"; be complete in and of itself without reference to the prior complaints or any other pleading, attachment, or document; comply with Rule 8(a)'s requirement of a "short and plain" statement of the claims; and clearly and succinctly describe what each defendant allegedly did or failed to do, and the damage or injury suffered by Plaintiff as a result. **No new claims or defendants may be added to the amended complaint without prior approval of the Court.**

OR

3.   If Plaintiff disagrees with the above analysis and/or believes sufficient further factual allegations cannot be added to the SAC to remedy the deficiencies identified, then Plaintiff shall file a Notice of Intent to proceed with the SAC. If Plaintiff chooses to file such Notice of Intent, the Court may treat the election as a statement that Plaintiff is unable to amend the SAC to address the defects identified, which may result in dismissal of any claims found deficient.

OR

4.   If Plaintiff no longer wishes to pursue this action, Plaintiff may dismiss it by filing a Notice of Dismissal under Federal Rule of Civil Procedure 41(a)(1). The Clerk is directed to send Plaintiff a Central District request for dismissal form.

**Plaintiff is cautioned that failure to timely file a fully compliant response as directed in this Order may result in the dismissal of this action**

23

**for the foregoing reasons, failure to prosecute, and/or failure to comply with a court order.**

Dated: June 07, 2024 _____

_____

JOHN D. EARLY

United States Magistrate Judge